IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| WILLIAM S. TAYLOR, SR.<br><br>    Plaintiff,<br><br>v.<br><br>TENNESSEE DEPARTMENT<br>OF SAFETY,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 20-cv-2855-MSN-tmp<br>)<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

Before the court is defendant Tennessee Department of Safety's Partial Motion to Dismiss, filed on February 2, 2021. (ECF No. 13.) Because *pro se* plaintiff William S. Taylor, Sr. did not timely respond to the instant motion, this court entered an order to show cause directing Taylor to respond by March 16, 2021. (ECF No. 15.) To date, Taylor still has not responded to the motion. For the reasons below, it is recommended that the partial motion to dismiss be granted.

**I.   PROPOSED FINDINGS OF FACT**

*Pro se* plaintiff William S. Taylor Sr. began working as a driver's license examiner for defendant Tennessee Department of Safety ("TDOS") in June of 2006. (ECF No. 1-2.) By 2018, he was among TDOS's oldest employees and one of only two male employees on staff. (Id.) TDOS terminated Taylor's employment on November

23, 2018, allegedly because of four warnings that he had received, ultimately culminating in "conduct unbecoming." (ECF No. 1-3 at 1, 6.) According to Taylor, the four warnings in his file stem from (1) an incident where he refused to work a shift because it would have put him into overtime in violation of department policy, (2) an accusation that he made profane remarks to his supervisor and generally did not get along with his co-workers, (3) an incident where a female co-worker sought a restraining order against him but was ultimately unsuccessful, and (4) an incident where he gave a Hispanic driver's license applicant a failing grade during an eye exam but treated an African-American applicant differently later that day. (ECF No. 1-3 at 1.) According to Taylor, his supervisor told him in May of 2018 that there were no complaints against him in his file. (ECF No. 1-3 at 1.) Taylor asserts that, although he was terminated on November 23, 2018, he was also given two suspensions that were set to occur from November 26 to 31, 2018, and from December 11 to 13, 2018. (ECF No. 1-2.) Taylor also alleges that a female co-worker "used inappropriate language against [him] in front of [his] co-workers and . . . all she got was a written warning." (ECF No. 1-3 at 4.) When he was accused of similar behavior, he alleges that he was suspended for five days. (ECF No. 1-3 at 4.)

Taylor believes that he was also terminated because he filed a charge with the Equal Employment Opportunity Commission ("EEOC")

on September 27, 2018. (ECF No. 1-3 at 1.) The EEOC charge alleged "discrimination based on my race, age, status and constant work[]place harassment" and accused TDOS of failing to accommodate his disability. (ECF No. 1-3 at 1.) According to Taylor, he filed the charge after TDOS neglected to follow up on requests from his Veterans Affairs doctor for accommodations under the Americans with Disabilities Act ("ADA"). (ECF No. 1-3 at 1.) The charge states that, because of his gout, tendonitis, and arthritis, his doctor recommended in 2013 that TDOS provide him with "a[n] ergonomic table, chair[,] and keyboard." (ECF No. 1-3 at 4.) His doctor allegedly repeated the recommendation in September of 2018 after he had only been provided with the keyboard. (ECF No. 1-3 at 4.) Taylor alleges that he was suspended for three days (from November 7 to 9, 2018) after he filed the EEOC charge. (ECF No. 1-2.)

Following his termination, Taylor petitioned the Tennessee Department of Labor and Workforce Development ("TDLWD") on January 11, 2019, for unemployment compensation benefits. (ECF No. 1-3 at 7.) The TDLWD initially denied his petition because he was terminated for cause. (ECF No. 1-3 at 7) On appeal, the TDLWD reversed its decision and found that he was entitled to benefits because "[h]is actions [did] not rise to misconduct." (ECF No. 1-3 at 9) Though the TDLWD considered evidence from each of Taylor's

alleged transgressions at TDOS, it did not consider his 2018 EEOC charge in its analysis. (ECF No. 1-3 at 7-9.)

On August 25, 2020, Taylor received a right-to-sue letter from the EEOC. (ECF No. 1-1.) Using a form provided by the Clerk's office to assist *pro se* litigants asserting employment discrimination claims, he filed the complaint that is presently before the court on November 20, 2020. (ECF No. 1.) Taylor's complaint asserts several causes of action for discrimination, including discrimination because of his sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and because of his disability in violation of Title I of the ADA, 42 U.S.C. §§ 12112-12117.[1] (ECF No. 1 at 1.) He also includes a non-specific claim for retaliation. (ECF No. 1 at 3.) Taylor states that he is seeking injunctive relief in the form of reinstatement and compensatory damages. (ECF No. 1 at 6.)

## II.   PROPOSED CONCLUSIONS OF LAW

**A.    Standard of Review**

---

[1] On Taylor's form complaint, he only checked the boxes marking employment discrimination in violation of Title VII and the ADA. (ECF No. 1 at 1.) In the section where he was asked to specify the basis for his discrimination, he checked the boxes for disability and age discrimination. (ECF No. 1 at 4.) For the purpose of resolving this motion, the undersigned construes his complaint as asserting claims under the ADA, the ADEA, and Title VII.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court views plaintiffs' allegations in the light most favorable to them and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. Of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556 U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). To satisfy this requirement, plaintiffs must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (alteration omitted) (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); see also Brown v. Matauszak, 415 F. App'x 608, 613 (6th Cir. 2011); cf. Pliler v. Ford, 542 U.S. 225, 231 (2004); Young Bok Song v. Gipson, 423 F. App'x 506, 510 (6th Cir. 2011)

**B.   Sovereign Immunity**

TDOS argues that Taylor's claims under the ADA and ADEA must be dismissed because TDOS is an arm of the state and is therefore immune from lawsuits brought by private citizens. The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although the text of the Amendment refers only to suits against a State by citizens of another State, [the Supreme Court] has repeatedly held that an unconsenting State also is immune from suits by its own citizens." Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 446 (2004) (collecting cases). In practice, the Eleventh Amendment establishes "a bar to federal-court jurisdiction when a private citizen sues a state or its

instrumentalities, whether for injunctive or monetary relief, unless the state has given express consent." Rucker v. Frazier Health Ctr., No. 2:14-cv-411, 2014 WL 6603311, at *2 (S.D. Ohio Nov. 19, 2014) (citing Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1983) and Lawson v. Shelby Cty., 211 F.3d 331, 334 (6th Cir. 2000)). The Eleventh Amendment's "far reaching" immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments . . . by citizens of another state, foreigners or its own citizens." Thiokol Corp. v. Dep't of Treasury, State of Mich., 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted). "Eleventh Amendment immunity attaches only to defendants that are the state itself or an 'arm of the State.'" Town of Smyrna v. Mun. Gas Auth. of Ga., No. 12-5476, 2013 WL 3762889, at *8 (6th Cir. July 19, 2013) (quoting Ernst v. Rising, 427 F.3d 351, 358 (6th Cir. 2005)); see also Mingus v. Butler, 591 F.3d 474, 481 (6th Cir. 2010). "The burden of establishing Eleventh Amendment immunity lies with the state[.]" Barker v. Goodrich, 649 F.3d 428, 432 (6th Cir. 2011) (citing Gragg v. Ky. Cabinet for Workforce Dev., 289 F.3d 958, 963 (6th Cir. 2002)).

TDOS is an agency of the state of Tennessee and is protected from suit by sovereign immunity under the Eleventh Amendment. See Stewart v. Tenn. Dep't of Safety and Homeland Sec., 1:19-cv-00083-TRM-SKL, 2019 WL 1715551, at *2 (E.D. Tenn. Mar. 28, 2019) (citing

Hill v. License, No. 3:18-CV-149-JRG-HBG, 2018 WL 1787295, at *2 (E.D. Tenn. Apr. 13, 2018)). However, courts recognize three exceptions to state sovereign immunity from suit in federal courts under the Eleventh Amendment: (1) when the exception established by the Ex Parte Young doctrine applies; (2) when the state has consented to suit; and (3) when Congress has acted, pursuant to its Fourteenth Amendment Enforcement Clause powers, to abrogate state sovereign immunity. S&M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008).

The Ex Parte Young doctrine allows private citizens to sue state officials in their official capacity for prospective injunctive relief. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (holding that Ex Parte Young applies only to suits for prospective relief against state officials and "has no application in suits against the States and their agencies, which are barred regardless of the relief sought") (citing Cory v. White, 457 U.S. 85, 90-91 (1982)); Whitfield v. Tennessee, 639 F.3d 253, 257 (6th Cir. 2011) ("An Ex parte Young action may be commenced *only* against a state official acting in her official capacity and may 'seek [only] prospective relief to end a continuing violation of federal law.'" (emphasis added)) (quoting Carten v. Kent State Univ., 282 F.3d 391, 395 (6th Cir. 2002)). Taylor names only TDOS as a defendant in his complaint

and, therefore, the Ex Parte Young doctrine does not apply.[2] See Johnson v. Sw. Tenn. Cmty. College, No. 08-cv-2473 P, 2010 WL 1417739, at *3 n.1 (W.D. Tenn. Mar. 31, 2010) ("The exception of Ex parte Young . . . does not apply here because Johnson has sued only a state agency, and not any state officials"). Moreover, the state of Tennessee has not consented to being sued by private citizens. Tenn. Code Ann. § 20-13-102(a); see also Brown v. Tennessee, No. 19-2613-TLP-tmp, 2019 WL 5550501, at *1 (W.D. Tenn. Sept. 19, 2019) ("Tennessee has not waived its sovereign

---

[2] The undersigned notes that the Sixth Circuit has held that the Ex Parte Young doctrine can apply to claims for prospective injunctive relief under both the ADA and ADEA. Meekison v. Voinovich, 67 F. App'x 900, 901 (6th Cir. 2003) (citing Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 374 n.9 (2001) and State Police for Automatic Ret. Ass'n v. DiFava, 317 F.3d 6, 12 (1st Cir. 2003)). Therefore, had Taylor named a state official in his or her official capacity as an additional defendant, the Ex Parte Young doctrine would likely apply to Taylor's request for reinstatement, as this is a form of prospective injunctive relief. See Whitfield v. Tennessee, 639 F.3d 253, 257 (6th Cir. 2011) (holding that a state employee sued in his or her official capacity was not immune from an ADA lawsuit requesting "reinstatement with the state in a like position"); Gong v. Univ. of Mich., No. 16-14516, 2018 WL 836446, at *8 (E.D. Mich. Feb. 13, 2018), affirmed by, No. 19-1068, 2019 WL 7598905 (6th Cir. Oct. 17, 2019) (holding that "[a] request for reinstatement to employment" is a form of prospective injunctive relief); Lacy v. Ohio Dep't of Job and Family Servs., No. 2:16-cv-912, 2017 WL 1397522, at *3 (S.D. Ohio Apr. 19, 2017) (finding that the Ex Parte Young doctrine did not apply to plaintiff's request for injunctive relief under Title I of the ADA because "[t]he sole named defendant" was a state entity, but allowing plaintiff to amend her complaint to name "at least one state official in his or her official capacity as a defendant"). Although this defect can be remedied, because Taylor did not respond to this motion despite a court order directing him to do so, the undersigned is unable to assess whether an order granting Taylor leave to amend his complaint is warranted.

immunity."). Therefore, the only question before the court is whether Congress abrogated the states' sovereign immunity for either the ADA or ADEA.

Regarding Taylor's claim for age discrimination under the ADEA, it has been well-established by both the Sixth Circuit and the United States Supreme Court that "Eleventh Amendment immunity bars suits for monetary relief against a state under the ADEA." Meekison v. Voinovich, 67 F. App'x 900, 901 (6th Cir. 2003) (citing Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000)). As a result, courts routinely dismiss ADEA claims brought by private citizens against states and state entities. See, e.g., McGarry v. Univ. of Miss. Med. Ctr., 355 F. App'x 853, 856 (5th Cir. 2009) (upholding the dismissal of an ADEA claim because "Congress did not abrogate the states' sovereign immunity with respect to the ADEA"); Abdalla v. Tenn. Dep't of Corrs., No. 2:20-cv-02041-SHM-cgc, 2021 WL 27305, at *3 (W.D. Tenn. Jan. 4, 2021) ("Plaintiff's ADA and ADEA claims against Defendant are barred by sovereign immunity."); Wilson v. Middle Tenn. State Univ., No. 3:19-0798, 2020 WL 6776300, at *4-5 (M.D. Tenn. Apr. 23, 2020) (same). The same principle applies here, as Taylor's complaint asserts an age discrimination claim under the ADEA against TDOS, a state entity. Accordingly, the undersigned

submits that TDOS is immune from Taylor's ADEA claim and recommends that it be dismissed.[3]

Likewise, regarding Taylor's disability discrimination claims under the ADA, the Supreme Court has held that Congress did not abrogate the states' Eleventh Amendment immunity for lawsuits brought pursuant to Title I of the ADA. Garrett, 531 U.S. at 368; see also Whitfield v. Tennessee, 639 F.3d 253, 257 (6th Cir. 2011) ("Because Title I [of the ADA] did not abrogate the states' Eleventh Amendment immunity, individuals may not sue states for money damages under Title I."); see also Babcock v. Michigan, 812 F.3d 531, 534 (6th Cir. 2016) (collecting cases showing that the ADA did not abrogate sovereign immunity for claims under Title I of the ADA, although it may have abrogated sovereign immunity "in limited circumstances" under other titles of the ADA). Similar to ADEA claims against state entities, courts in the Sixth Circuit dismiss claims under Title I of the ADA against state entities as a matter of course.[4] See, e.g., Gong, 2019 WL 7598905, at *2 ("Gong

---

[3] This recommendation applies with equal force to any claim for retaliation under the ADEA brought by Taylor. See Latham v. Office of Atty. Gen., 395 F.3d 261, 270 (6th Cir. 2005) (holding that the Supreme Court's holding in Kimel applied to a claim for retaliation under the ADEA).

[4] The ADA's anti-retaliation provisions are set forth in Title V of the Act. 42 U.S.C. § 12203(a). However, the holding in Garrett only references claims under Title I of the ADA. 531 U.S. at 368; see also Whitfield, 639 F.3d at 257. The Sixth Circuit has not addressed whether Eleventh Amendment sovereign immunity applies to retaliation claims under Title V of the ADA. See Cook v. Garner,

explicitly brought her claims under Title I of the ADA, and thus she cannot sue the University for monetary damages."); Abdalla, 2021 WL 27305, at *3; Emery v. Mich. Dept. of Civil Rights, No. 15-11467, 2016 WL 1090429, at *2 (E.D. Mich. Mar. 21, 2016) ("In light of the ruling in Garrett, it is clear that Plaintiff's ADA claims against Defendant MDCR are barred by Eleventh Amendment immunity."). Because, the Eleventh Amendment bars Taylor from bringing his ADA claim against TDOS, the undersigned recommends that this claim be dismissed.

### III. RECOMMENDATIONS

---

No. 19-5931, 2020 WL 4876309, at *3 (6th Cir. June 17, 2020) (noting that "neither [the Sixth Circuit] nor the Supreme Court has decided whether Title V of the ADA abrogates state sovereign immunity" and finding it "unnecessary to decide whether the State was entitled to qualified immunity on this claim" because plaintiff's ADA retaliation claim failed on the merits). Regardless, several district courts within this circuit have held that the Eleventh Amendment also bars suits for retaliation under the ADA where the "claim of retaliation is predicated on actions [plaintiff] took to complain of or oppose an alleged violation of Title I of the ADA." Emery, 2016 WL 1090429, at *2 (citing Demshki v. Monteith, 255 F.3d 986, 988 (9th Cir. 2001)); see also Davis v. Gordon, 251 F. Supp. 3d 1211, 1214 (M.D. Tenn. 2017) (collecting cases finding that Eleventh Amendment sovereign immunity applies to ADA retaliation claims "that derive upon allegation[s] of employment discrimination under Title I."); McCullum v. Owensboro Cmty. & Tech. College, No. 4:09CV-00121-M, 2010 WL 5393852, at *3 (W.D. Ky. Dec. 22, 2010) ("[W]here the underlying claim is predicated on alleged violations of Title I of the ADA, then the Title I immunity recognized in Garrett is generally extended to ADA Title V retaliation claims."). As such, to the extent that Taylor is asserting a claim for retaliation under the ADA, it is likewise barred by the Eleventh Amendment.

For the reasons above, it is recommended that TDOS's Partial Motion to Dismiss be granted and that Taylor's ADA and ADEA claims be dismissed.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

April 1, 2021
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**